UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CARDIOVASCULAR CARE OF
SARASOTA, P.A., et al.,**

    **Plaintiffs,**

v.                                                     Case No. 8:08-cv-1931-T-30TBM

**CARDINAL HEALTH, INC., et al.,**

    **Defendants.**
_____/

# **ORDER**

THIS CAUSE comes before the Court upon Plaintiffs' Motion to Certify Class (Dkt. #36), Defendants' Motion to Stay Class Certification Proceedings Pending Discovery and Disposition of Anticipated Summary Judgment Motion on the Merits of Plaintiffs' Individual Claims (Dkt. #49), Plaintiffs' Memorandum in Opposition to Defendants' Motion to Stay Class Certification (Dkt. #50), Plaintiff Cardinal Health, Inc.'s Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint (Dkt. #41), Plaintiffs' Memorandum in Opposition to Cardinal Health, Inc.'s Motion to Dismiss (Dkt. #46), Plaintiffs Cardinal Health 414, LLC and Cardinal Health, Inc.'s Motion to Dismiss Count III of Plaintiff's Amended Complaint (Dkt. #42), Defendants' Memorandum in Opposition to Plaintiffs' Motion to Dismiss Count III (Dkt. #47), Plaintiffs Cardinal Health 100, Inc. and Cardinal Health, Inc.'s Motion to Dismiss Count IV of Plaintiff's First Amended Complaint (Dkt.

#43), and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Count IV (Dkt. #48). The Court, having considered Plaintiffs' Motion for Class Certification, the First Amended Complaint, exhibits, affidavits, memoranda, and being otherwise advised in the premises, concludes that Plaintiffs' Motion to Certify Class should be denied. And, without a certified class, the Court has no jurisdiction over this case.

**Background**.

Plaintiffs Cardiovascular Care of Sarasota, P.A. ("Cardio") and The Heart Institute of Venice, PLLC ("Heart Institute") bring a four count complaint against Defendants Cardinal Health, Inc. ("CHI"), Cardinal Health 414 LLC f/k/a Cardinal Health 414, Inc. ("414"), and Cardinal Health 100, Inc. ("100") alleging: Count I - Breach of Contract against 414 and CHI for Fuel Surcharges; Count II - Breach of Contract against 414 and CHI for Weekday Standard Run Excess Charges; Count III - Breach of Implied Covenant of Good Faith and Fair Dealing against 414 and CHI; and Count IV - Unjust Enrichment against CHI and 100. CHI is the parent corporation of subsidiary corporations, 414 and 100. 100 is the sole member of 414.

*Cardio's Contract with 414.*

On April 8, 2005, Cardio entered into a contract with 414 entitled "SYNtrac® Agreement" which established the terms and conditions of a seller/purchaser relationship for the sale and delivery of certain pharmaceuticals used in Cardio's medical practice (the

"Cardio Agreement").[1] The Cardio Agreement provides an initial term of 4 years commencing March 1, 2005, and contains a governing law provision indicating that California law should be applied. In the Cardio Agreement, the parties agreed that 414 would give 30 days notice prior to increasing or raising its prices. Pursuant to the Cardio Agreement, the products to be provided by 414 and the prices for such products are attached as Exhibit A to the Cardio Agreement (the "Cardio Price List"). Incorporated within the Cardio Price List are the terms of "Delivery Charges," which state:

> Daily (includes 2 scheduled deliveries during normal business hours)   No charge
> Each Additional Delivery (during normal business hours)                $10.00

The Cardio Price List also states, "The prices and terms offered in this Agreement will remain in effect for sixty (60) days from March 1, 2005."

In the First Amended Complaint, Cardio alleges that at some point after the commencement of the contracts Defendants started charging a $3.00 to $4.00 per day "Fuel Surcharge" for the daily deliveries they made to Cardio. In Count I, Cardio claims that the fuel surcharge breached the "no charge" provision for daily deliveries contained within the Cardio Price List. Cardio also alleges that Defendant unilaterally increased the charge for a "Weekday Standard Run" from $10.00 to $11.50 in January of 2006, then from $11.50 to $12.75 in January 2007. In Count II, Cardio claims that the unilateral increase in the Weekday Standard Run Charge breached the Cardio Agreement because the Agreement does

---

[1] Notably, the agreement attached as Exhibit #2 to the Amended Complaint, appears to be an agreement between 414 and entity named "Bee Ridge Heart and Vascular." See Dkt. #30-3. This discrepancy has not been explained, however, Defendants have not asserted that Cardio lacks standing to enforce the agreement. Of further note, page 7 of the agreement is missing.

not authorize Defendants to unilaterally raise the Weekday Standard Run charge in excess of the contractual amount.

*Heart Institute's Contract with 414.*

On August 3, 2005, Heart Institute entered into a contract with 414 entitled "SYNtrac® Agreement" which established the terms and conditions of a seller/purchaser relationship for the sale and delivery of certain pharmaceuticals used in Heart Institute's medical practice (the "Heart Institute Agreement"). The Heart Institute Agreement provides an initial term of 3 years commencing August 1, 2005, and contains a governing law provision indicating that Ohio law should be applied. In the Heart Institute Agreement, the parties agreed that 414 would give 30 days notice prior to increasing or raising its prices. The Heart Institute Agreement also contains a "Binding Arbitration" clause.

Pursuant to the Heart Institute Agreement, the products to be provided by 414 and the prices for such products are attached as Exhibit A to the Heart Institute Agreement (the "Heart Institute Price List"). Incorporated within the Heart Institute Price List are the terms of "Delivery Charges," which state:

| | | |
|---|---|---|
| Daily (Includes 2 scheduled deliveries during normal business hours) | | No Charge |
| Each Additional Delivery | Each | $25.00 |
| STAT Delivery | Each | $25.00 |
| Weekend Delivery | Each | $75.00 |

The Heart Institute Price List also states, in pertinent part: "The prices and terms offered in this Agreement will remain in effect for sixty (60) days from August 1, 2005."

In the First Amended Complaint, Heart Institute alleges that at some point after the commencement of the contracts Defendants started charging a $3.00 to $4.00 per day "Fuel Surcharge" for the daily deliveries they made to Heart Institute. In Count I, Heart Institute claims that the fuel surcharge breached the "no charge" provision for daily deliveries contained within the Heart Institute Price List. Heart Institute also alleges that Defendant unilaterally increased the charge for a "Weekday Standard Run" from $25.00 to $28.75 in January of 2006, then from $28.75 to $29.70 in January 2008. In Count II, Heart Institute claims that the unilateral increase in the Weekday Standard Run Charge breached the Heart Institute Agreement because the agreement does not authorize Defendants to unilaterally raise the Weekday Standard Run charge in excess of the contractual amount.

**Discussion.**

I. **Plaintiffs' Request to Certify Class.**

In the First Amended Complaint, Plaintiffs also request that this Court certify the following Fuel Surcharge class:

> All persons and entities in the United States who contracted with Cardinal Health, Inc., or any of its subsidiaries (including but not limited to Cardinal Health 414, LLC, Cardinal Health 414, Inc., and Cardinal Health 100, Inc.) Under the terms of a "SYNtrac® Agreement" or other similar contract for the delivery of pharmaceutical or other products and (a) who paid a fuel surcharge for the delivery of pharmaceutical or other products at any time on or after September 26, 2003 where the contract terms provided for "no charge" daily deliveries; and/or (b) who paid a delivery charge in excess of the contractual delivery charge at any time on or after September 26, 2003.

Plaintiffs claim that there are approximately 25,000 cardiology physician practices (or potential class members) receiving products and deliveries from Defendants in the United

States. Thus, Plaintiffs suspect that the conduct complained of in the First Amended Complaint may be widespread among all of Defendants' customers.

## II. Prerequisites to Class Certification.

A district court is vested with broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). The initiation and maintenance of a class action is governed by Rule 23 of the Federal Rules of Civil Procedure. The Rule places upon the named class representatives the burden of proving entitlement to class certification. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984). In determining whether the class representatives have met this burden, the court considers only whether the representatives have satisfied the requirements of Rule 23; it should not consider the merits of the proponents' claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). This Circuit, however, has cautioned that this principle not be invoked so rigidly as "to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met its burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). Accordingly, "a court may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir. 1987).

Rule 23(a) sets forth certain prerequisites that a plaintiff must satisfy before a court may further consider certifying a class: (1) the class must be "so numerous that joinder of all members is impracticable" ("numerosity"); (2) there must be "questions of fact or law

common to the class" ("commonality"); (3) "the claims or defenses of the representative parties must be typical of the claims or defenses of the class" ("typicality"); and (4) the named representative must "fairly and adequately protect the interests of the class" ("adequacy of representation").[2]

### A. Rule 23(b)(1)(A).

In addition to satisfying all the requirements of Rule 23(a), a plaintiff seeking class certification must establish that one of the three provisions of Rule 23(b) has been met. The Court may certify an action as a class action under 23(b)(1)(A) if: (1) there is a substantial risk of separate actions being brought in the absence of a class action; (2) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class; and (3) the inconsistent or varying adjudications would, in turn, establish incompatible standards of conduct for the party opposing the class. *See* F.R.C.P. 23 (b)(1)(A).

Plaintiffs contend that all requirements of 23(b)(1)(A) are met. Plaintiffs assert that the prosecution of separate actions would establish incompatible standards of conduct for Defendants regarding the assessment and collection of extra-contractual fuel surcharges and delivery charges based on their standard contract from their customers.

This Court disagrees. The Eleventh Circuit has held that certification under this subsection is appropriate only for plaintiffs seeking injunctive and declaratory relief. *In re*

---

[2] *See* Rule 23(a), Federal Rules of Civil Procedure.

*Dennis Greenman Securities Litigation*, 829 F.2d 1539, 1545 (11th Cir. 1987).[3] The Eleventh Circuit has similarly ruled that the class seeking "compensatory damages cannot be certified as a (b)(1)(A) class." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 n. 7 (11th Cir. 2000). While Plaintiffs include a request for permanent injunction preventing Defendants from charging and collecting extra-contractual fuel surcharges or delivery fees in the future within the wherefore clause of Count IV, this action is primarily a breach of contract action seeking compensatory damages.[4] Therefore, this Court finds that certification pursuant to Rule (b)(1)(A) is not appropriate in the instant case, because Plaintiffs seek compensatory damages.

**B.    Rule 23(b)(2).**

An action may be maintained as a class action under subpart 23(b)(2) if the party opposing the class action acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. *See* F.R.C.P. 23(b)(2). Plaintiffs argue that certification is appropriate pursuant to Rule 23(b)(2), because Defendants have assessed and collected and

---

[3] Underlying this rule is the concern that if compensatory damage actions can be certified under Rule 23 (b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3). *See McDonnell Douglas*, 523 F.2d 1086 (9th Cir. 1975).

[4] Plaintiffs request "permanent injunctive relief preventing Defendants from charging and collecting extra-contractual fuel surcharges or delivery charges in the future" or "a declaration [from this Court] that Plaintiffs and the Class may terminate the contract." Such requests do not appear to be appropriate remedies under the allegations of the Complaint. Pursuant to Exhibits #8 and 9 incorporated within Plaintiffs' First Amended Complaint (Dkts. #30-9 and 10), Plaintiffs terminated their contracts with 414 on or about September 24, 2007. Further, Plaintiffs are free to terminate their respective contracts pursuant to the written terms of the contract. Plaintiffs have not included a count for declaratory relief in the complaint.

continue to assess and collect extra-contractual fuel surcharges and delivery charges from all similarly situated purchasers of pharmaceutical products; and therefore, Defendants have acted or refused to act on grounds generally applicable to the proposed class making appropriate final injunctive relief or declaratory relief with respect to the proposed class as a whole.

Parties seeking to certify class actions under Rule 23(b)(2) must, by the express terms of the Rule, request final declaratory or injunctive relief. *Bower v. Bunker Hill Co.*, 114 F.R.D. 587, 596 (E.D. Wash. 1986). It is not sufficient that injunctive or corresponding declaratory relief be among the remedies sought by the parties. *Grillasca v. Hess Corporation*, No. 8:05-cv-1736-T-17-TGW, 2007 WL 2121726, *15 (M.D. Fla. July 24, 2007). In most cases, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages. *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001).

The primary request of Plaintiffs in this case is one for money damages. All four counts seek money damages. Counts I and II are based on allegations of Defendants' breach of certain sales contracts. Counts III and IV are based on the same facts but are plead in the alternative in the event the contracts are found to be ambiguous. Pursuant to the Eleventh's Circuit's holding in *Murray,* certification of class under Rule 23(b)(2) is inappropriate in this case.

### C. Rule 23(b)(3).

Under Rule 23(B)(3), a class action may be maintained if the court finds: (1) that common questions of law or fact predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for resolving the controversy. Plaintiffs argue that certification is proper under Rule 23(b)(3), because there are predominant common questions of fact and law as to whether Defendants' charging and collecting extra-contractual fuel surcharges and delivery charges breached the contracts, breached the implied covenant of good faith and fair dealing, and constituted unjust enrichment. Plaintiffs further argue that a class action is superior to other available litigation methods because many potential class members injured by Defendants' conduct will not be compensated for their injuries in the absence of a class action since it is too expensive for many individual members to prosecute this litigation.

A class action for money damages may be certified under Rule 23(b)(3). Unlike Rule 23(b)(1) and (b)(2), Rule 23(b)(3) does not require that declaratory or injunctive relief be sought. Rather, it requires only that a class action achieve an economy of time, effort, and expense without sacrificing procedural fairness.

#### 1. Predominance and Superiority.

Rule 23(b)(3) lists four factors for the Court to consider when determining the predominance of issues and superiority of proceeding as a class action. Those factors are: (1) the individual interests of the members of the purported class in controlling the prosecution or defense of separate actions: (2) the extent and nature of any already-existing

litigation; (3) the desirability of concentrating the litigation in a particular forum; and (4) the manageability of a class action. *See* Rule 23(b) Federal Rules of Civil Procedure; *Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441 (M.D. Fla. 2000).

### a. Predominance.

"The initial burden is upon the class proponent to tender some credible basis for claiming that the issues subject to generalized proof on a class-wide basis - the common questions - predominate over questions subject only to individualized proof." *Jim Moore Insurance Agency, Inc. v. State Farm Mutual Automobile Insurance Co., Inc.*, No. 02-80381-Civ, 2003 WL 21146714, *8 (S.D. Fla. May 6, 2003). "If the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent." *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 328 (5th Cir. 1978).

To assess whether a proposed class action would degenerate into a series of time consuming and costly mini-trials, the court must consider the nature of the claims, as well as the facts and the issues presented by those claims; it may not, however, consider the particular merits of the claims. *Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 56 (S.D. Fla. 1990).

In addition, Courts have repeatedly held that breach of contract claims are inappropriate for class certification where, as here, they involve individualized inquiries to determine liability and damages. *Gilman v. John Hancock Variable Life Insurance*

*Company*, No. 02-00051 AB, 2003 WL 23191098 *15 (Fla. Cir. Ct. Oct. 20, 2003), *see also, e.g., Jim Moore Insurance Agency, Inc. v. State Farm Mutual Automobile Insurance Co., Inc.*, 2003 WL 21146714, *13-14 (class action not superior in action for breach of contract, unjust enrichment, and conversion, where volume of individualized factual determinations, which would need to be made according to varying state law would render the proposed action unmanageable for the Court"); *Gibbs Properties*, 196 F.R.D. 430, 441-42 (class action not superior where individualized damages determinations would be required).

Upon a review of the First Amended Complaint, incorporated exhibits and Plaintiffs' motion for class certification, it appears that if this matter were to proceed as a class action a large number of factual variations and legal variations would give rise to a multitude of time consuming and costly mini-trials.

### i. Factual Variations.

Plaintiffs contend that Defendants subjected them to a common course of conduct (charging extra-contractual fuel surcharges and delivery charges) in violation of a standard contract. Although this common course of conduct satisfies the commonality prerequisite of Rule 23(a)(2), it does not satisfy the more rigorous Rule 23(b)(3) requirement that common questions of fact actually predominate over questions affecting only individual class members.

The damages phase of the proceedings here would give rise to innumerable factual issues. The finder of fact would have to: (1) review each price list attachment to each standard contract in order to determine applicable prices, rates, delivery charges, or similar

charges, (2) determine the effective date of each contract and whether sixty days had passed prior to changes in delivery charges, (3) determine whether thirty days notice was given to each individual customer prior to changes in delivery charges, (4) review up to five years worth of invoices and delivery records for each customer in order to determine the number of deliveries per day during normal business hours and after business hours, number of STAT and weekend deliveries per day, frequency of fuel surcharges per day, frequency of standard run charges per week, and increases in standard run charges over a three year time period; (5) determine where payments were sent and to what entity each was made payable; and (6) perform potentially complex mathematical calculations for each individual customer. Such determinations are highly individualized and would require a detailed examination of the circumstances peculiar to each of the thousands of customers - potential class members.

### ii. Legal Variations.

If this matter were class certified, at the very least this Court would have to apply the contract law of two jurisdictions (Ohio and California, assuming the contracts of other class members do not have different choice of law provisions) and the tort law of three jurisdictions (Ohio, California and Florida). All for only two individual class members. The legal variations would compound exponentially if this court were to certify "all persons and entities in the United States who contracted with Cardinal Health, Inc., or any of its subsidiaries" (potentially 25,000 members). Unlike a federal question case, when plaintiffs seek certification of a multi-state, non-federal question class, a court cannot turn to a uniform body of law to guide the litigation. *See Jim Moore*, *10. Where plaintiffs invoke the laws

of several states, the court must examine their impact on the proceedings in light of the predominance requirement. *See Hammett v. American Bankers Insurance Co.*, 203 F.R.D. 690, 701 (S.D. Fla. 2001).

### b. Superiority.

In addition to establishing that common questions predominate, a plaintiff seeking class certification must also establish that a class action is the superior method of adjudicating the dispute. "If another available method of handling the controversy appears better suited for a particular action then the action should not be allowed to proceed under 23(b)(3)." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998), *see* Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 1777 at p. 519 (1986).

Based on the factual and legal variations mentioned above, this Court concludes that the difficulties likely to be encountered in the management of this case as a class action tilt heavily against class certification. "Manageability" encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit. *See Eisen*, 417 U.S. 156, 164 (1974). This Court also concludes that a class action is not the superior method of adjudicating this dispute. Notably, the contracts at issue provide for binding arbitration and such method appears to be better suited for this particular action.

Accordingly, this Court concludes that Plaintiffs' Motion for Class Action Certification should be denied.

**III.   Lack of Jurisdiction.**

This Court's jurisdiction was founded upon the Class Action Fairness Act ("CAFA"), which confers jurisdiction on federal courts where, in addition to other requirements, there are at least 100 proposed class members and the total amount in controversy exceeds $5,000,000.00. 28 U.S.C. §§ 1332(d)(2) and (5). Absent Plaintiffs' class action allegations, this Court does not possess jurisdiction over this matter.

Pursuant to Plaintiffs' allegations in the First Amended Complaint, Plaintiffs' individual monetary damages would not exceed $3,000.00. Title 28 U.S.C. § 1332 provides: "[T]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds that sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states."  28 U.S.C. § 1332(a)(1).

Based on the foregoing, the Court concludes that Plaintiffs' claim is actually for less than the required jurisdictional amount. Accordingly, Plaintiff's First Amended Complaint should be dismissed for lack of subject matter jurisdiction.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiffs' Motion to Certify Class (Dkt. #36) is **DENIED**.

2. Defendants' Motion to Stay Class Certification Proceedings Pending Discovery and Disposition of Anticipated Summary Judgment Motion on the Merits of Plaintiffs' Individual Claims (Dkt. #49) is **DENIED AS MOOT**.

3. Plaintiff Cardinal Health, Inc.'s Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint (Dkt. #41), Plaintiffs Cardinal Health

414, LLC and Cardinal Health, Inc.'s Motion to Dismiss Count III of Plaintiff's Amended Complaint (Dkt. #42), and Plaintiffs Cardinal Health 100, Inc. and Cardinal Health, Inc.'s Motion to Dismiss Count IV of Plaintiff's First Amended Complaint are **DENIED AS MOOT**.

4. Plaintiffs' First Amended Complaint (Dkt. #30) is **DISMISSED** for lack of jurisdiction.

5. The Clerk is directed to terminate any pending motions and to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on April 3, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2008\08-cv-1931.mt class cert deny 36.wpd